IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BEN CHRISTIAN,<br><br>    Plaintiff,<br><br>v.<br><br>THE SOUTHERN COMPANY,<br><br>    Defendant. | CIVIL ACTION<br>NO. 1:20-cv-04563-WMR |

### ORDER

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 93], which recommends that Defendant's Motion for Summary Judgment [Doc. 81] be GRANTED. Upon consideration of the R&R, together with Plaintiff's objections to the R&R and Plaintiffs' reply thereto, the Court ADOPTS the findings and conclusions of the R&R and GRANTS Defendant's motion for summary judgment.

### I.  LEGAL STANDARDS

Review of R&R

In reviewing a magistrate court's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

1

636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). As Plaintiff has filed certain objections to the R&R, the Court will conduct a de novo review of the specific matters raised by the objections.

Standard on Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Teagan v. City of McDonough*, 949 F.3d 670, 675 (11th Cir. 2020).  The moving party bears the burden of showing the absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact").  After a motion for summary judgment has been properly supported, the nonmovant must present affirmative evidence "from which a jury might return a verdict in his favor" and that demonstrates the presence of "a genuine issue of fact that requires a trial." *Anderson*

2

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In reviewing a motion for summary judgment, a court should view the facts and all reasonable inferences from those facts in the light most favorable to the nonmovant. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1991) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

## II.   FINDINGS OF FACT

Plaintiff was hired as an employee of Southern Company Services, Inc. (hereinafter "Defendant") in 1980. (Doc. 85-1 at ¶ 1; Doc. 91 at ¶ 2). By 2016, Plaintiff was working in Defendant's Budgeting Department as a budget staff analyst. (Doc. 85-1 at ¶ 1; Doc. 91 at ¶ 3).

On August 10, 2017, Plaintiff met with Cheryl Peters, the head of the Budgeting Department, and Erin Pickens, the Human Resources Manager, for a performance review. (Doc. 85-1 at ¶¶ 7, 14). Due to perceived performance issues, Peters initiated an improvement process that required Plaintiff to meet with Peters on a weekly basis for a period of 60 days. *(Id.* at ¶¶ 15–16).

On November 3, 2017, Plaintiff met again with Peters and Pickens. At this meeting, Peters informed Plaintiff that he was being terminated, effective

immediately, and she gave him the option of retiring or being involuntarily terminated. (Doc. 81-4 at ¶¶ 41–42; Doc. 82-1 at 179–181, 297). While the meeting was taking place, Plaintiff's access to Defendant's computer systems was terminated, his office building access badge was deactivated, he was forced to relinquish the badge, and his personal belongings were retrieved from his desk and given to him. (Doc. 85-1 at ¶¶ 35–37.) According to Plaintiff, he explained to Peters that he had been working on a critical project that only he could do and that termination of his employment "would not be in her best interests." (Doc. 82-1 at 17 (transcript p. 16:9–12)). In response, Peters did not waiver on her decision to terminate Plaintiff's employment, but indicated that she wanted to talk to Defendant's president about the project and whether Plaintiff's final day should be the end of the year or upon completion of the project. (Doc. 85-2 at ¶¶ 55–56; Doc. 82-1 at 186 (transcript p. 185:13–18)). At the conclusion of the meeting, Peters told Plaintiff that she would notify him on Monday (November 6) "about what his options were." (Doc. 85-2 at ¶ 59). A security officer then escorted Plaintiff out of the building to his car. (Doc. 85-1 at ¶ 39). Since then, Plaintiff has not performed any work activities for Defendant, returned to the office building, or communicated with Peters. (*Id*. at ¶¶ 40, 42).

On November 6, 2017, Peters left a voicemail for Plaintiff in which she stated that she had additional information for him to consider regarding his options. (Doc.

85-1 at ¶ 43). Plaintiff did not return Peters' call. (Doc. 82-1 at 184 (transcript p. 183)). Instead, on November 7th, Plaintiff emailed Pickens to ask for "the items discussed in our meeting on November 3, 2017, concerning my departure [from] Southern Company Services." In that email, Plaintiff noted that he received a voice mail from Peters indicating that there was additional information for him to consider in regard to his options and, according to Plaintiff, he was "reach[ing] out to Erin Pickens for additional clarification on information on what his options were." (Doc. 85-1 at ¶¶ 44, 46). On November 8th, Pickens responded to his inquiry by stating:

> We discussed that your employment was being terminated, with your last day in the office being Friday, November 3rd, and last day of pay being Nov. 17. We gave you the option to notify us in writing[] if you chose to retire in lieu of termination.
>
> We also discussed that you and Cheryl would make contact on Monday, and that you would decide by Wednesday, November 8 (today) if you were choosing to retire.
>
> As you stated, I believe that Cheryl tried to contact you on Monday. I would encourage you to touch base with her.

(Doc. 85-1 at ¶ 47; Doc. 81-5 at 17). Later that afternoon, Plaintiff replied, "I will be discussing my case with Corporate Concerns [the employee complaint department]. . . . [T]here are no grounds for this treatment." (Doc. 81-5 at 16).

On November 10, 2017, Plaintiff submitted a complaint to Corporate Concerns in which he acknowledged, inter alia, that his employment was terminated

5

at the meeting with Peters and Pickens on November 3, 2017, and that he had been given the option of retiring. (Doc. 85-1 at ¶ 50; *see also* Doc. 82-1 at 297).

On November 11th, Plaintiff emailed Pickens:

> It is my understanding that I have been terminated from Southern Company. This was made very clear to me when I was escorted by security from the company premises. This experience has been very painful and upsetting.
>
> Could you provide me the key dates that are required to set up my insurance and social security payments?

(Doc. 81-5 at 20). On November 13th, Pickens responded by reminding Plaintiff that she provided him the contact information for setting up post-employment insurance and social security payments during the November 3rd meeting, and she attached that same information to her email. (*Id.* at 19; *see also* Doc 85-1 at ¶ 52). Plaintiff had no further communications with Pickens following this November 13th email. (Doc. 85-1 at ¶ 53).

Plaintiff filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2018 (Doc. 82-1 at 396), and he received his Notice of Right to Sue on August 10, 2020 (*id.* at 397–98). Thereafter, Plaintiff filed this Complaint (Doc. 1) alleging that Defendant terminated his employment based on his age, in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621–34.

## III. DISCUSSION

Defendant moved for summary judgment on the grounds that: (i) Plaintiff failed to exhaust his administrative remedies when he did not timely file his charge of discrimination with the EEOC; and (ii) Plaintiff cannot establish a prima facie case of age discrimination or show that Defendant's legitimate reason for his termination was pretextual. In recommending that Defendant's motion for summary judgment be granted, the magistrate judge concluded that Plaintiff's ADEA claim was time-barred and, thus, did not address the merits of the claim. (*See* Doc. 93).

The Plaintiff has raised five objections to the magistrate judge's R&R, which the Court shall address in turn.

### A. Plaintiff's Statements Regarding Status of Employment

In his first objection, Plaintiff contends that the magistrate judge erred on the issue of when Plaintiff received notice of his termination by viewing certain statements he made regarding the status of his employment in the light most favorable to Defendant. Specifically, Plaintiff takes issue with the following findings in the magistrate judge's R&R:

> - [On] November 7th, Plaintiff asked Pickens about "the items discussed in our meeting on November 3, 2017, *concerning my departure* [from] Southern Company Services[.]" (emphasis added). This email shows Plaintiff's awareness that the November 3rd meeting concerned the end of his employment with Defendant.

7

> - In his November 10th internal complaint, [Plaintiff] stated: "On November 3, 2017, I was invited to an update meeting with Cheryl Peters[.] . . . At the meeting, I was terminated."
>
> - In his November 11, 2017 email to Pickens, [Plaintiff] stated: that "It is my understanding that I have been terminated. This was made very clear to me when I was escorted by security from the company premises" on November 3rd.
>
> - In his EEOC Charge, [Plaintiff] stated: "At a meeting on November 3, 2017, Cheryl Peters informed me that I could either retire or be terminated[.]"

(Doc. 93 at 12; Doc. 97 at 4). Plaintiff argues that the magistrate judge erroneously took his statements at face value without considering crucial temporal and factual context and, thus, failed to construe them in a light most favorable to him. However, Plaintiff fails to demonstrate how his statements were taken out of context or misconstrued in any way. The statements clearly reflect Plaintiff's understanding that his employment was terminated at the meeting on November 3rd and that he had the option of deciding how that termination would be classified—either as his retirement or as an involuntary termination. No reasonable jury could interpret those statements otherwise. The fact that Plaintiff now disagrees with (or seeks to clarify) his earlier statements is of no consequence. The Court cannot disregard his definitive statements, which were made at or around the time of the events in question, simply because they are harmful to his case. His objection on this issue is overruled.

**B. Cheryl Peters' Statements Regarding Plaintiff's Options**

In his second objection to the R&R, Plaintiff contends that the magistrate judge erred on the issue of notice of termination by ignoring the alleged equivocation of Peters regarding the prospect of his "continued employment." Specifically, he points to evidence that Peters had indicated at the November 3rd meeting that she wanted to talk to Defendant's president about whether Plaintiff would be allowed to work until the end of the year or the completion of a critical project and that she would notify him on November 6th about what his options were. (Doc. 85-2 at ¶¶ 55–56, 59; Doc. 82-1 at 186 (transcript p. 185:13–18)). However, there is no evidence in the record to show that Peters' decision to terminate Plaintiff's employment (notice of termination) was equivocal. Peters did not invite Plaintiff to respond or to contribute any information or otherwise suggest that he could have any impact on the final termination decision. Here, the only ambiguity created by Peters' statements is the date on which his final day at work would be. (*Id*.) Any arguments to the contrary would have to ignore the content of Plaintiff's own statements, referenced above, which confirm his understanding that Peters made the decision to terminate his employment on November 3rd.

Furthermore, the record shows that Peters attempted to contact Plaintiff on November 6th to inform him what his options were, but Plaintiff did not return her call. (Doc. 85-1 at ¶ 43; Doc. 82-1 at 184 (transcript p. 183)). In any event, any

9

ambiguity concerning Peters' statements was resolved on November 8th when Pickens responded to Plaintiff's inquiry by informing him that his employment was terminated, that his last day of employment was Friday (November 3rd) that his last day of pay would be November 17th, and that he must notify them in writing that same day (Nov. 8th) if he chose to retire in lieu of involuntary termination. (Doc. 85-1 at ¶ 47; Doc. 81-5 at 17).

In sum, while there may have been some initial ambiguity in Peters' statements as to when Plaintiff's final date would be, there was no equivocation by either Peters or Pickens regarding the termination of Plaintiff's employment. His objection on this issue is overruled.

### C. Pickens' Email to Plaintiff

In his third objection to the R&R, Plaintiff contends that the magistrate judge improperly considered the November 8th email from Pickens in isolation and without the appropriate context. Specifically, he argues that "[a] reasonable jury could find that Ms. Pickens' email did not constitute unequivocal communication of termination because it was a non-decisionmaker's interpretation of the decisionmaker's statements" and did not address what the additional information was concerning his options. (Doc. 97 at 15–16).

As an initial matter, the Court notes that Plaintiff did not make this "non-decisionmaker" argument in opposition to Defendant's motion for summary

10

judgment and, thus, the Court has the discretion to disregard it. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (explaining that "requiring the district court to consider new arguments raised in the objections effectively would eliminate efficiencies gained through the Magistrates Act ... and would unfairly benefit litigants who could change their tactics after issuance of the magistrate's report and recommendation"); *see also Worley v. City of Lilburn*, 408 F. App'x 248, 253 (11th Cir. 2011) (per curiam) ("[T]he district court did not abuse its discretion in refusing to consider evidence and arguments that Worley advanced for the first time in his objections to the magistrate's R&R").

Second, Plaintiff appears to be urging this Court to find that a non-decisionmaker—even a Human Resources manager such as Pickens—cannot, as a matter of law, communicate a termination decision made by another. Plaintiff offers no legal authority for this proposition. *See Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (offering an argument without citation to legal authority is insufficient to raise the issue before the court).

In any event, Plaintiff's argument concerning the alleged equivocal nature of Pickens' November 8th email is belied by his own response to the email which, taken together with his other statements, provide the necessary context. Plaintiff's same-day response to Pickens' email did not express confusion about the status of his employment or otherwise suggest that Pickens' communication of the termination

decision was equivocal. To the contrary, Plaintiff responded to this email as one would expect an employee displeased with their firing to respond:

> I will be discussing my case with Corporate Concerns. Any unbiased review of my 2017 contributions will show that there are no grounds for this treatment. . .

(Doc. 81-5 at p. 16.) Further, Plaintiff submitted a complaint to Corporate Concerns on November 10th in which he stated that his employment was terminated on November 3rd and that he had been given the option of retiring. (Doc. 85-1 at ¶ 50; *see also* Doc. 82-1 at 297). And, in a subsequent email to Pickens, on November 11th, Plaintiff confirmed that he understood he had been terminated, stating that "[t]his was made very clear to me when I was escorted by security from the company premises" on November 3, 2017. These contemporaneous statements show that Pickens' email was not equivocal or taken out of context—rather, his statements reflect that he understood what had been communicated to him. The fact that Pickens also suggested in her November 8th email that Plaintiff should return Peters' phone call does not turn an otherwise unequivocal communication of the termination decision into an equivocal one, as Pickens had informed Plaintiff that he had to decide that day if he was choosing to retire. (Doc. 85-1 at ¶ 47; Doc. 81-5 at 17). His objection on this issue is overruled.

### D. Issue of Equitable Tolling

In his fourth objection to the R&R, Plaintiff contends that the magistrate judge erred by declining to invoke the doctrine of equitable tolling to extend his deadline for filing his charge of discrimination with the EEOC. His contention is without merit.

Before a plaintiff may sue for discrimination under the ADEA, he must first exhaust his administrative remedies by timely filing a charge of discrimination with the EEOC. *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The "[f]ailure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." *Rizo v. Alabama Dep't of Human Res.*, 228 F. App'x 832, 836 (11th Cir. 2007) (citing *Alexander v. Fulton County, GA*, 207 F.3d 1303, 1332 (11th Cir. 2000)). In Georgia, a charge of discrimination "must be filed within 180 days of the last discriminatory act." *Wilkerson*, 270 F.3d at 1317 (citing 42 U.S.C. § 2000e-5).

However, the Court notes "that the charging period of the ADEA is subject to equitable modification." *Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987) (citing *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981) (en banc); *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 393 (1982)). "Equitable modification suspends a limitations period 'until the facts which

13

would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Id.* (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)).

Here, the undisputed evidence shows that Plaintiff was informed by Peters at the November 3, 2017, meeting that his employment was being terminated and that he had two options: he could choose to retire or be involuntarily terminated. (Doc. 81-4 at ¶¶ 41–42; Doc. 82-1 at 179–181, 297). During that meeting, Plaintiff's access to Defendant's computer systems was terminated, his office building access badge was deactivated, he was forced to relinquish the badge, and his personal belongings were retrieved from his desk and given to him. (Doc. 85-1 at ¶¶ 35–37). He was then escorted out of the building by a security officer. Under these circumstances, it would have been apparent to a reasonably prudent person that he was being terminated and, thus, that the cause of action arising out of such termination would have accrued at that time. Indeed, Plaintiff admitted that it was very clear to him that he had been terminated on November 3rd. (Doc. 81-5 at 20). Therefore, the 180-day deadline for filing his charge of age discrimination with the EOC expired on May 2, 2018. However, Plaintiff did not file his discrimination charge with the EEOC until May 8, 2018. (Doc. 82-1 at 396).

In support of this contention that equitable tolling should apply to the timing of his EEOC charge, Plaintiff points to evidence that Peters had indicated at the

14

November 3, 2017, meeting that she wanted to talk with company president about the critical project that Plaintiff had been working on and whether Plaintiff's final day should be the end of the year or upon completion of that project. (Doc. 85-2 at ¶¶ 55–56; Doc. 82-1 at 186 (transcript p. 185:13–18)). As to that issue, Peters informed Plaintiff that she would let him know the following Monday (November 6th). (Doc. 85-2 at ¶ 59). Based on the foregoing, Plaintiff argues that his EEOC filing deadline should be extended because Peters' comments regarding the critical project left the status of his employment open-ended and ambiguous. (*See* Doc. 97 at p. 19). However, Plaintiff's own statements and Peters' declaration confirm that he received notice of his termination on November 3, 2017. Peters was not equivocal on her decision to terminate him. At best, Peters comments regarding the critical project created an ambiguity as to when his final day would be. It is the date on which Plaintiff received notice of his termination, not his final day of employment, that constitutes the "alleged unlawful practice" which triggers the EEOC filing period. *See Cocke*, 817 F.2d at 1561. Thus, his perceived confusion as to when his final day of employment would be does not justify an equitable tolling of the 180-day filing period. His objection on this issue is overruled.

### E. The Magistrate Judge Did Not Err in Declining to Address the Merits of Plaintiff's Discrimination Claim on Summary Judgment

In his final objection to the R&R, Plaintiff contends that the magistrate judge erred in concluding that Defendant is entitled to summary judgment on the timeliness

15

issue and, thus, should have reached the merits of Plaintiff's age discrimination claim on summary judgment. The Court disagrees.

As explained above, the record evidence demonstrates that Plaintiff received unequivocal notice of the termination of his employment on November 3, 2017, and that he received confirmation or clarification of that notice on November 8, 2017. Thus, the 180-day period in which to file his discrimination charge with the EEOC expired either on May 2, 2018, or May 7, 2018, depending on which date is used as notice for the triggering event. As Plaintiff did not file his EEOC charge until May 8, 2018, his charge with the EEOC was untimely. The Court finds that his failure to file a timely charge bars his claim. *See Rizo*, 228 F. App'x at 836; *Alexander*, 207 F.3d at 1332. *See also EEOC v. Summer Classics, Inc.*, 41 F. Supp. 3d 1287, 1292 (N.D. Ala. 2011) (finding the plaintiff's charge untimely because it was filed 14 days late); *Carter v. Univ. of S. Ala. Children's & Women's Hosp.*, 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007) (finding the plaintiff's charge untimely because it was filed one day late).

As the Court finds that Plaintiff's age discrimination claim is time-barred, it is simply not necessary to address the underlying merits of his claim. *See, e.g., Grippo v. Perazzo*, 357 F.3d 1218, 1224 (11th Cir. 2004) ("Because we conclude that the statute of limitations bars [the plaintiff]'s federal securities claims, we need not address the issue of whether he pleaded these claims with the requisite

particularity"); *Pierri v. Cingular Wireless, Ltd. Liab. Co.*, 397 F. Supp. 2d 1364, 1374 n.3 (N.D. Ga. 2005) ("The Court need not address the merits of Plaintiff's discriminatory pay claim because it is clear that claim is untimely").  Plaintiff's objection in this regard is overruled.

## IV. CONCLUSION

After considering the R&R and conducting a de novo review of the issues raised in Defendant's objections, the Court hereby ADOPTS the recommendation of the magistrate judge as the Opinion and Order of this Court.  Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [Doc. 81] is **GRANTED**.  The Clerk is directed to close this file.

SO ORDERED, this 21st day of February, 2024.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE